FILED
2017 Nov-07  AM 11:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | | |
|---|---|---|
| **GEORGIA JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NUMBER:** |
| | ) | **5:16-cv-01683-CLS** |
| **MASSACHUSETTS MUTUAL LIFE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE EXPERT OPINIONS AND TESTIMONY OF PLAINTIFF'S EXPERT PROFESSOR SCOTT L. TOMAR</u>

Peter H. Burke, Esq. (ASB-1992-K74P)
Andrew C. Allen, Esq. (ASB-3867-E56A)
Amanda Stansberry-Johns, Esq. (ASB-7793-M64S)
**BURKE HARVEY, LLC**
3535 Grandview Parkway
Suite 100
Birmingham, Alabama 35243
Phone:  205-930-9091
Fax:  205-930-9054
pburke@burkeharvey.com
aallen@burkeharvey.com
ajohns@burkeharvey.com

Attorneys for Plaintiff, Georgia Jones

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................i

INTRODUCTION........................................................................................1

PROFESSOR TOMAR'S BACKGROUND AND OPINIONS................................3

ARGUMENT..............................................................................................6

    A.    Professor Tomar Satisfies the Requirements of Rule 702....................6

        1.    Professor Tomar Possesses Specialized Knowledge that Will Aid the Court and a Jury Understand the Evidence and Determine Facts at Issue..........................................................7

        2.    Professor Tomar's testimony is based on sufficient facts or data.................................................................................9

        3.    Professor Tomar's testimony is the product of reliable principles and methods........................................................................11

        4.    Professor Tomar reliably applied the principles and methods to the facts of the case...............................................................13

    B.    Professor Tomar Easily Passes Any *Daubert* Inquiry......................15

    C.    MassMutual's claim that Professor Tomar is unqualified to provide an opinion on the causation of Dr. Jones' back pain is irredeemably flawed.........................................................................17

    D.    To the extent the Court has any concerns regarding Professor Tomar's testimony, those issues are best resolved through cross-examination or limiting instructions and not by wholesale exclusion........................19

CONCLUSION..........................................................................................20

CERTIFICATE OF SERVICE......................................................................22

**COMES NOW,** the Plaintiff, Dr. Georgia Jones ("Plaintiff or Dr. Jones"), by and through her undersigned counsel, and responds to Defendant MassMutual's Motion to Exclude the Expert Opinions and Testimony of Plaintiff's Expert Scott L. Tomar (Doc 36).

## INTRODUCTION

MassMutual seeks to exclude the Court's consideration of Professor Tomar's Rule 26 Expert Report and deposition testimony at the summary judgment stage, and further, to exclude him from testifying on any matter at trial. MassMutual's motion clearly overreaches and is due to be denied for either purpose.[1]

This lawsuit's predominant issue is whether Dr. Jones can perform the main duties of her occupation of general dentistry. Professor Tomar provided "an expert opinion as to whether the symptoms reported by Dr. Georgia Jones and the diagnoses provided by her medical professionals would prohibit her from being able to practice clinical dentistry." (Doc 36-1 at ¶ 6). In forming his opinion, Professor Tomar relied upon the medical and vocational evidence in the record, his skill, training, and education, as an epidemiologist, clinical practitioner, and tenured Full Professor of Dentistry, and Interim Chairman of the Department of

---

[1] The fact that MassMutual has moved to exclude Professor Tomar's testimony does not necessarily require a *Daubert* hearing. See *Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167, 1176 (1999) (noting that the trial judge has the discretion "both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises.")

Community Dentistry in the College of Dentistry at the University of Florida, his first-hand experience of more than 30 years of full and part-time clinical practice, as well as an author of peer reviewed literature and, in this case, researcher relating to the prevalence of low back pain among dentists. Id. at ¶¶ 7-8.

Professor Tomar's knowledge, skill, training, education and experience easily qualify him as an expert. Moreover, his testimony would certainly assist this Court and a jury to understand the physical requirements of practicing dentistry in a general practice under conditions similar to those performed by Dr. Jones in her practice, and further, explain how the physical requirements imposed by those conditions lead to the prevalence of acute low back pain among dentists. His opinions are tied to the facts of this case and based upon peer reviewed literature, which as an academic he is both familiar with and regularly relies upon in his scholarly pursuits as a Full Professor of Dentistry. Hence, they satisfy both the relevancy and reliability prongs of Federal Rule of Evidence Rule 702.

In carrying out the gate-keeping role established in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), this Court must keep in mind that there are less restrictive means to safeguard the reliability of evidence . As the United States Supreme Court reminded courts of plenary jurisdiction in that case, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but

admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) Hence, MassMutual's attempt to completely bar Professor Tomar's testimony from consideration at the summary judgment stage, let alone at trial, clearly overreaches the appropriate evidentiary boundaries established by the Federal Rules of Evidence.

Accordingly, the Defendant's Motion *In Limine* should be denied, not merely because of the standard articulated by the Supreme Court in *Daubert*, but also because, as demonstrated below, the evidence Professor Tomar is prepared to proffer is far from "shaky" and therefore justifiably admissible.

## PROFESSOR TOMAR'S BACKGROUND AND OPINIONS

Set forth below are relevant excerpts from Professor Tomar's Expert Report. These excerpts demonstrate Professor Tomar's education, training, skill and experience, qualifying him to explain the physical requirements to practice dentistry, summarize some of the relevant literature regarding musculoskeletal disorders among dentists, provide his commentary on MassMutual's surveillance of Dr. Jones, and finally, articulate his considered conclusion that Dr. Jones cannot practice the main duties required of her occupation as a general dentistry practitioner because of the acute low back pain she suffers as a result of the prolonged sitting, awkward positioning, and spinal flexion required to access a patient's oral cavity to perform the detailed, exacting procedures that are an

essential part of any general dental practice.

In pertinent part, Professor Tomar's Expert Report states the following:

I am a tenured Full Professor at the University Of Florida College Of Dentistry (UFCD), where I have been employed since 2000. I am currently the Interim Chair of the Department of Community Dentistry and Behavioral Science and hold affiliate faculty appointments in the Department of Epidemiology and the Department of Health Outcomes and Policy. I have published numerous research articles and book chapters on a variety of public health topics. I have served as an editor for two scientific journals, the *Journal of Public Health Dentistry* and the *Journal of Evidence Based on Dental Practice*. I currently serve as Chair of the Oral Health Section of the American Public Health Association and am a Past president of the American Association of Public Health Dentistry. (Doc. 36-1 at ¶1).

I have been a Diplomat of the American Board of Dental Public Health since 1994. Among other areas, the specialty of Dental Public Health is involved in monitoring and addressing occupational hazards of dental health care workers. (Doc. 36-1 at ¶2).
…

Dental schools in the United States and, to my knowledge, all other industrialized countries teach dental students to practice nearly all aspects of general dentistry while sitting on an operator's chair while the patient is on a dental patient chair in a reclined position. That has been the case in the United States for at least 40 years. (Doc. 36-1 at ¶10).

The overwhelming majority of general dentists in the United States practice while seated next to the patient chair as described above. (Doc. 36-1 at ¶11).

That seated position, combined with the need to lean forward slightly and bend the head downward to be able to visualize the patient's oral cavity and maintain a static position for long periods of time places tremendous stress on a dentist's lower back. I and the large majority of dentists I have known have experienced back pain at

4

some time in their career, often for many years.  I have had several colleagues who retired from clinical practice specifically due to musculoskeletal injuries, most frequently due to chronic back pain. My personal experiences and anecdotal observations are corroborated by the scientific literature. For example, the recent nationally-representative survey by La Rochelle found that 64% of U.S. general dentists reported a work-related musculoskeletal disorder.  The prevalence was consistently higher among female dentists than among male dentists, regardless of the number of years in practice. The lower back and neck were the most frequently affected regions. (Doc. 36-1 at ¶12).

Among the 23 studies included in that systematic review, the prevalence of musculoskeletal disorders among dentists affecting the back ranged from 36% to 60%.  Lower back pain was the most prevalent musculoskeletal problem among dentist in most of the included studies. (Doc. 36-1 at ¶12).

Work-related musculoskeletal disorders among dentist lead to relatively high levels of disability and early unplanned departures from the dental profession.  (Doc. 36-1 at ¶13).

As consistently shown in the medical records that I reviewed, Dr. Georgia Jones reported severe, debilitating pain when she tried to practice dentistry or sat in a position that approximated the seated positioning and posture required to practice general dentistry.  Despite seeking care from a wide range of health care providers, she was unable to obtain relief.  (Doc. 36-1 at ¶14).

Based on my review of the medical records available to me, there was a biologic basis for the severe pain experienced by Dr. Jones.  Dr. Jones was diagnosed with degenerated and herniated disks in the lumbar region of the spine, lumbosacral spondylosis, nonallopathic lesions of the lumbar and sacral regions, lumbosacral arthrosis, lumbar radiculopathy and piriformis syndrome. (Doc. 36-1 at ¶15).

In my opinion, it is not possible to safely practice dentistry when in such pain that it is either unbearable or so distracting that it prevents the dentist from focusing on the detailed, exacting

procedures that are an essential part of general dental practice.  Based on my reading of the medical records cited above, that is the situation in which Dr. Georgia Jones finds herself.  As she correctly noted at several times, it also would not be safe for her to practice dentistry while under the influence of analgesics that could affect her mental state. (Doc. 36-1 at ¶16).

In my opinion, observations of behaviors included in the covert surveillance reports of Dr. Jones are not relevant to the question of whether Dr. Georgia Jones is able to practice dentistry.  None of the reported behaviors observed by the agent, such as lifting grocery bags or getting into or out of a car, duplicate or approximate the physical positioning involved in the practice of dentistry. Dental practice requires sitting in a static position with the body slightly leaning forward and head tilted downward, while holding instruments in both hands, retracting the cheek, and focusing intently on performing surgical procedures measured in fractions of millimeters.  Further, those procedures are performed within a small, dark, wet environment while also monitoring the patient's well-being.  Pushing a cart through Wal-Mart or putting a grocery bag into a hatchback does not simulate those occupational demands. (Doc. 36-1 at ¶17).

When Dr. Jones was instructed by physical therapist Jay H. Segal as part of her 2/26/2016 FCE to sit on a stool, trunk forward flexed 10 degrees, while performing hand activities for 5 minutes, he noted "Client is not able to maintain trunk flexion for more than 3 minutes.  She lacks trunk stabilization and abdominal strength to hold the lumbar spine in neutral." Of the activities requested in the FCE, that activity most closely resembled the one that a dentist would need to perform for at least 5 hours a day. (Doc. 36-1 at ¶18.)

## ARGUMENT

### A.    Professor Tomar Satisfies the Requirements of Rule 702.

Federal Rule of Evidence 702 governs the admissibility of expert testimony.

It provides that:

A witness who is qualified as an expert by knowledge, skill, experience,

6

training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and,

> (d) the expert has reliably applied the principles and methods to the facts of the case.

**1.    Professor Tomar Possesses Specialized Knowledge that Will Aid the Court and a Jury Understand the Evidence and Determine Facts at Issue.**

Professor Tomar certainly satisfies the first requirement of Rule 702, as he teaches dentistry in both clinical and academic settings as a tenured Full Professor at the University of Florida College of Dentistry and holds advanced degrees in epidemiology and public health. *United States v. Frazier*, 387 F.3d 1244, 1260-61 (11th Cir. 2004) ("experts may be qualified in various ways," including by scientific training, education, and experience). Even MassMutual acknowledges "Dr. Tomar has more than his fair share of advanced degrees." (Doc. 36 at p. 6 of 28).

Instead, MassMutual attacks Professor Tomar's ability to comment on the effects of practicing dentistry because "he is not an expert in musculoskeletal disorders or back pain." (Doc. 36, at p. 7 of 28). Simply stated, Professor Tomar's

experience with dentistry and epidemiology[2] are more than sufficient to allow him to render his opinions in court regarding the physical requirements of practicing dentistry, and how those requirements lead to the development of low back pain, notwithstanding his candid admission that he is not an expert in musculoskeletal disorders or back pain.

As explained *infra*, Professor Tomar relied upon the medical and vocational evidence in MassMutual's administrative file and accepted it as true in forming his own specific opinions. For example, he explained: "there was a biologic basis for the severe pain experienced by Dr. Jones. Dr. Jones was diagnosed with degenerated and herniated disks in the lumbar region of the spine, lumbosacral spondylosis, nonallopathic lesions of the lumbar and sacral regions, lumbosacral arthrosis, lumbar radiculopathy and piriformis syndrome". (Doc. 36-1 at ¶15).

Granted, Dr. Tomar is not an expert in musculoskeletal disorders or back pain, and he was not proffered as one, but his reliance on the records of others, who are, is permissible.[3]  Likewise, although he did make an observation regarding

---

[2] *Wikipedia* defines epidemiology as "the study and analysis of the patterns, causes, and effects of health and disease conditions in defined populations. It is the cornerstone of public health, and shapes policy decisions and evidence-based practice by identifying risk factors for disease and targets for preventive healthcare. Epidemiologists help with study design, collection, and statistical analysis of data, amend interpretation and dissemination of results (including peer review and occasional systematic review)."

[3] It is fairly well-settled that the facts and data upon which an expert may rely in reaching an expert opinion includes the opinions and findings of other experts, if experts in their respective field would reasonably rely on other expert's opinions and findings. See *United States v. Winston*, 372 F. App'x 17, 20 (11th Cir. 2010) (allowing an expert witness's testimony that was

the length of time MassMutual took to render a decision, Dr. Tomar is not being offered as an expert in insurance claims handling or practices. Rather, he is being offered as an expert[4] in the physical demands required of a general dentist practitioner, and further, to discredit the subjective opinions of MassMutual's paid witnesses, who admittedly know nothing of the physical demands of a general dentistry practice, who conducted no studies which replicated the physical demands of such a practice, and who possess no expertise or experience in general dentistry.

In sum, Dr. Tomar qualifies as an expert and his opinions are reasonably reliable, based on sound scientific methodology and tied inextricably to his areas of expertise.  His testimony will not only aid the Court at the summary judgment stage but further aid the jury when trial occurs.

### 2.   Professor Tomar's testimony is based on sufficient facts or data.

In forming his opinions, Professor Tomar reviewed MassMutual's claim file,

---

based in part on an opinion of a non-testifying expert, noting that "an expert witness may base his testimony on inadmissible information so long as such information is 'regularly relied upon by experts in his field.'"). See also, FRE Rule 703.

[4] It is certainly not the case that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience alone. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony. *United States v. Jones*, 107 F.3d 1147 (6th Cir. 1997).  Here, however, Professor Tomar enjoys the unique qualities of possessing expertise in multiple fields, including dentistry and epidemiology, based upon multiple sources, including education, clinical practice, academic and scholarly discipline and achievement, personal observation, training, skill, and experience spanning a period of more than 30 years.

which contained medical and vocational assessments of Dr. Jones. He also researched, reviewed and relied upon peer reviewed literature regarding the prevalence of low back pain among dentists. Hence, Professor Tomar's opinions are based on sufficient verifiable facts specific to Dr. Jones, as well as, data generally applicable to the practice and academic study of dentistry and the scientific field of epidemiology.

For example, in his deposition Professor Tomar explained how Dr. Jones' limitations in leaning forward, which by its nature requires an awkward spine flexion over long periods, rendered her unable to practice dentistry: "What they are saying is that she has limitations that prohibit her from being able to lean forward and work in awkward positions and I'm saying I don't know how you do dentistry without doing that because watch any general dentist they will be leaning forward and working in, for what most people, is an awkward position." (Doc. 36-3 at p. 105).

Professor Tomar testified in his deposition that he consulted articles published in peer reviewed journals to help formulate his opinions, and that these articles are the type of pedagogical resources that academics such as University Professors routinely rely upon. (Doc. 36-3 at p. 126). Professor Tomar then stated: "I mean as I mentioned earlier, one of the things I both teach and practice is evidence based dental care. So while we don't rely entirely on scientific evidence

that is actually a big part of the decision-making information. And so we try to identify the best available scientific evidence to try to inform our decisions."

See *Broussard v. Maples*, 535 F. App'x 825, 828 (11th Cir. 2013) (Rule 703 of the Federal Rules of Evidence "allows an expert to base his opinion on facts or data that would otherwise be inadmissible, such as hearsay, if other 'experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion;'") see also, *Greenwood Utilities Comm'n v. Mississippi Power Co.*, 751 F.2d 1484, 1495 (5th Cir. 1985) ("[W]hen an expert's opinion is based on facts not admissible in evidence the court should make a threshold factual inquiry to determine whether the data providing the basis for the opinion is of a type reasonably relied on by experts in that field to form such opinions."). *Eberli v. Cirrus Design Corp.*, 615 F. Supp. 2d 1357, 1364 (S.D. Fla. 2009) ("an expert's testimony may be formulated by the use of the facts, data and conclusions of other experts").

In sum, Professor Tomar's opinions are based on sufficient facts and data making them reliable and, therefore, admissible both for purposes of opposing Defendant's and supporting Plaintiff's pending cross-motions for summary judgment and at trial

### 3.  **Professor Tomar's testimony is the product of reliable principles and methods.**

Professor Tomar is both a dentist and an epidemiologist.  He applied his

11

training and experience in these areas to the specific facts of this case to reach his conclusions.

> Q.     In your judgment has your academic research as a professor, your experience in the clinical environment of general dentistry, your training and your experience and observations, are those all factors that you relied upon in preparing your expert report?

> A.     Absolutely. I mean as I stated at the beginning of the report it's based on my experience as a dentist for 30 something years and almost 20 years in academia as both an educator and including clinical education of dental students and as a researcher.

(Doc. 36-3 at p. 128).

To the extent that Professor Tomar offered an opinion regarding the covert surveillance, or defense counsel requested that he comment on the conclusions of Independent Medical Examinations ("IMEs"), Professor Tomar's opinions were informed by his clinical and educational background and experience. For example, when asked why he did not reference Dr. Kelsey's opinion, Dr. Tomar responded:

> What I again will say **[is]** that **[it]** is not necessarily relevant to the question of whether she **[Dr. Jones]** is able to function in the position and posture that's required to practice dentistry. And there is nothing here whether -- and it goes in length about the surveillance of her carrying grocery bags. I have no doubt that she did those things. What I -- what I do doubt is it has any relevance to whether somebody can work side chair as a general dentist.

> Q.     Do you have any reason to believe that Dr. Kelsey or Dr. Carnel for that matter or Dr. Denver didn't have an understanding of what Ms. Jones did?

12

A.      I'm just saying what they have written here in terms of the activities that they watched her do both directly and as part of the covert surveillance operation I don't think has any -- it doesn't have direct relevance on the question of can this person function as a general dentist in the positioning that's required to do that safely.

(Doc. 36-3 at pp. 115-116).

In sum, Professor Tomar's testimony is the product of reliable principles and methods.  See *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). (For nonscientific expert testimony, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.").Given Professor Tomar's extensive educational background and experience, unquestionably Professor Tomar's testimony proves reliable.

### 4.      Professor Tomar reliably applied the principles and methods to the facts of the case.

MassMutual attempts to undermine Professor Tomar's opinions by conjuring a straw-man, who it would make to appear as if he jumps from one correlation or association to another, all in order to reach a false conclusion, that MassMutual may then easily repel.

For example, MassMutual misleadingly asserts that Professor Tomar's opinions were simply derived by taking some random data showing that a survey group of dentists have musculoskeletal disease, that a dentist's sitting position causes musculoskeletal disease, and therefore, because Dr. Jones was a dentist she must have back pain so debilitating she is unable to practice dentistry because of

musculoskeletal disease.[5]  (Doc. 36 at pp. 14-15).

Defendant's description constitutes a gross mischaracterization of Professor Tomar's opinions and the basis of his report and his testimony.  Professor Tomar testified that he relied upon the underlying medical records, FCEs, and vocational assessments that specifically related to Dr. Jones.  Utilizing his experience as an epidemiologist, he found a biological link between her occupation and the severe pain experienced by Dr. Jones.  He further noted, based upon his survey of peer reviewed literature, that the low back pain issues Dr. Jones experienced were common among dentists, and more specifically among female general dentistry practitioners.  He also noted anecdotal evidence, based upon his thirty plus years engaged in the dental profession, of other similarly situated colleagues who likewise experienced acute low back pain to a degree that required them to abandon their practice.[6]

---

[5] Of course, one could characterize MassMutual's position as little more than its assertion that Dr. Jones should not be in as much pain as she claims, and therefore, she can practice dentistry: a genuinely disputed issue clearly more appropriate for the trier of fact to decide.

[6] "[W]e believe that anecdotal evidence can play an important role in bolstering statistical evidence, but that only in the rare case will anecdotal evidence suffice standing alone. *Engineering Contrs. Ass'n v. Metropolitan Dade County,* 122 F.3d 895, 925 (11th Cir. 1997) (context of affirmative action).  Here, Professor Tomar's anecdotal evidence forms a very small part of his overall report and merely corroborates what the peer reviewed literature concluded. *Daytona Grand Inc., v. City of Daytona Beach,* 490 F.3d 860, 881 (11th Cir. 2007) (Lollipop's argument that the City's evidence is flawed because it consists of "anecdotal" accounts rather than "empirical" studies essentially asks this Court to hold today that the City's reliance on anything but empirical studies based on scientific methods is unreasonable. This was not the law before *Alameda Books,* and it is not the law now.")  Moreover, the Court could instruct the jury to give Professor Tomar's anecdotal evidence whatever weight it deems appropriate, without wholesale denying its admissibility.

In sum, it is evident that Dr. Tomar's methodology and conclusions are sound and should be allowed. <u>See</u> *Taylor v. Novartis Pharms. Corp.*, 2013 U.S. Dist. LEXIS 133180 (S.D. Fla., Apr. 22, 2013) at *10 ("<u>Daubert</u> does not require absolute certainty before an expert can proffer an opinion and allows for the admissibility of new theories provided they are based on a reliable methodology. . . . The fact that an expert witness speaks in probabilities, rather than certainties, does not by itself make the testimony unreliable.")

### B.   <u>Professor Tomar Easily Passes Any *Daubert* Inquiry.</u>

As the Eleventh Circuit explained in *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998), courts must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

The first two factors have already been thoroughly discussed, *supra*, by showing that Professor Tomar satisfies the requirements of Rule 702. The third factor, that the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue, is discussed herein.

Quite remarkably, MassMutual makes the assertion that Professor Tomar's

testimony would not aid a jury as it would somehow be distracting from the real issues in the case. It contends that "Dr. Tomar is here because Jones wants this case to be about the dental profession, and not about her." (Doc. 36, at pp. 23-24 of 28). The case is obviously about both, i.e., whether Dr. Jones can perform the material duties of her occupation of general dentistry. Professor Tomar's testimony regarding the physical requirements of practicing general dentistry, which includes using a side chair while maintaining a flexed torso, will clearly aid a jury in making this determination.

MassMutual is free to argue to the jury that Dr. Jones "repeatedly failed to offer sufficient medical evidence to support her claim and her incredibly mild pathology does not support a medically verifiable conclusion that her back pain was severe," (Doc. 36, at p. 24 of 28) but that assertion does not serve as a valid basis to exclude Professor Tomar's testimony. Instead, those arguments are best presented to a jury on cross examination. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) ("The question of whether the expert is credible or whether his or her theories are correct given the circumstances of a particular case is a factual one best left for the jury to determine after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based.")

Finally, MassMutual contends that Professor Tomar's testimony regarding

the prevalence of low back pain among dentists should be excluded, because the "development of back pain after sitting hunched over a patient for extended periods of time is not a matter beyond the understanding of the average lay person." (Doc. 36, at p. 25 of 28).[7]   Professor Tomar's testimony, however, far exceeds merely explaining this correlation, as he will also provide instruction to the jury on how dentistry is practiced, the physical demands of the profession, and why a dentist experiencing severe low back pain cannot reliably practice and/or should not take prescription medication as it could present safety issues for physician and the patient.

In sum, it is evident Professor Tomar's testimony would clearly aid the fact finder and should not be excluded.

### C.   MassMutual's claim that Professor Tomar is unqualified to provide an opinion on the causation of Dr. Jones' back pain is irredeemably flawed.

The argument MassMutual asserts to exclude Professor Tomar's testimony on causation is twofold. First, it contends his causation testimony should be excluded because he fails to explain the physiology of how sitting on a dentist's stool can cause the ligament tears Dr. Jones sustained. Second, MassMutual argues that "The Court is not permitted to …rely on the temporal relationship [between an injury and a purported cause] **by itself** as evidence of causation."

---

[7] Given the forty-two months it took MassMutual to process Dr. Jones' claim, it does appear that this matter was beyond the understanding of MassMutual.

(brief at p. 17)(emphasis added).

Neither Dr. Jones nor Professor Tomar ever alleged that the dental stool "caused" her back injury.   Rather, both have merely stated that she in fact sustained a back injury, which is acutely aggravated by prolonged periods of sitting on a dental stool while maintaining the awkward spinal flexion and precise manual dexterity required by the nature of her occupation. There is ample medical evidence in the record of which Professor Tomar was made aware supporting the condition upon which he reasonably relied in forming his conclusions and inferences. At no point did Professor Tomar ever articulate a cause, let alone a sole cause, for the back pain Dr. Jones endured and which led to the demise of her dental practice, and certainly not the cause MassMutual posited in its brief.

To the contrary, Professor Tomar's conclusions do not conclude that Dr. Jones' stool caused her injury, only that the symptoms that she suffers are supported by medical evidence and consistent with injuries suffered by a substantial percentage of general dentistry practitioners because of the physical demands of their occupation.

Indeed, FRE 703 specifically authorizes the admissibility of opinions such as those offered by Dr. Tomar.  FRE 703 provides in pertinent part that:

> An expert may base an opinion on facts or data that the expert has been made aware of [here the opinions of Bledsoe, Segal, and others, as further informed by his own research into peer reviewed articles regularly relied upon by academics such as Dr. Tomar] or personally

18

observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted…

(FRE Rule 703).

Accordingly, there is no rational legal basis to preclude Professor Tomar from reasonably relying upon Bledsoe, Segal, and others' opinions, conclusions, or inferences, so long as their opinions are based upon the kinds of facts or data experts in their respective fields would reasonably rely upon.

Thus, Professor Tomar's conclusion that Dr. Jones is unable to perform the essential functions of a general dentistry practice based upon the opinions of other experts and his own knowledge, skill, experience, training, and education is sound and should be deemed admissible.

**D.** **To the extent the Court has any concerns regarding Professor Tomar's testimony, those issues are best resolved through cross-examination or limiting instructions and not by wholesale exclusion.**

It is well settled that the weight to be given to admissible expert testimony is a matter for the jury. See *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) ("[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence. . . . Quite the contrary, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" (quoting *Daubert*, 509 U.S. at 596).

19

Moreover, any "[o]rders in limine which exclude broad categories of evidence should rarely be employed." *Goldman v. Healthcare Mgmt. Sys., Inc.*, 559 F. Supp. 2d 853, 871 (W.D. Mich. 2008) (quoting *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975)). *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596, (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

## CONCLUSION

"A review of case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." *United States v. H&R Block, Inc.*, 831 F.Supp. 2d 27, 32 (D.C.D.C. 2011).   Moreover, *Daubert* did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). Accordingly, Professor Tomar's expert report should be considered at the summary judgment stage, and when a trial occurs, he should be allowed to present his opinions to a jury subject to cross-examination and or the Court's prudent limiting instructions.

**WHEREFORE, premises considered,** Defendant MassMutual's Motion *In*

*Limine,* seeking to strike the expert testimony and opinions of Professor Tomar, is due to be denied.

Respectfully submitted,


 /s/ *Peter H. Burke*
Peter H. Burke
Attorney for Plaintiff


**OF COUNSEL**:

Peter H. Burke, Esq. (ASB-1992-K74P)
Andrew C. Allen, Esq. (ASB-3867-E56A)
Amanda Stansberry-Johns, Esq. (ASB-7793-M64S)
**BURKE HARVEY, LLC**
3535 Grandview Parkway
Suite 100
Birmingham, Alabama 35243
Phone:     205-930-9091
Fax:   205-930-9054
pburke@burkeharvey.com
aallen@burkeharvey.com
ajohns@burkeharvey.com

21

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the above and foregoing has been served upon the following listed person by the Court's CM/ECF system, this the 7th day of November, 2017:

Jeffrey M. Grantham
John David Collins
Thomas J. Butler
Ashlee D. Riopka
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, AL  35203-2618

                  */s/ Peter Burke*
                  OF COUNSEL