

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **GEORGIA JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 5:16-CV-01683-CLS** |
| | ) | |
| **MASSACHUSETTS MUTUAL** | ) | |
| **LIFE INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Georgia Jones, a clinical dentist, asserts claims against defendant, Massachusetts Mutual Life Insurance Company, for breach of contract and bad faith. Her claims are based upon defendant's denial of benefits under a Disability Income and a Life Policy providing long-term disability and waiver of premium benefits.[1] The case currently is before the court on defendant's motion to exclude the expert opinions and testimony of plaintiff's retained expert witness, Dr. Scott L. Tomar.[2]

## I. STANDARD OF REVIEW

Analysis of the admissibility of expert testimony must begin with Federal Rule of Evidence 702, which provides that:

---

[1] *See* doc. no. 1 (Complaint).

[2] Doc. no. 36.

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"'Rule 702 compels the district courts to perform the critical 'gatekeeping' function concerning the admissibility of expert scientific [and technical] evidence.'" *United States v. Abreu*, 406 F.3d 1304, 1306 (11th Cir. 2005) (quoting *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004)) (alteration in original). "This function inherently requires the trial court to conduct an exacting analysis of the foundations of expert opinions to ensure they meet the standards for admissibility under Rule 702." *Id.* (internal quotation marks omitted).

> The objective of that requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).  The analysis requires

> the proponent of the testimony [to] show that:  (1) the expert is qualified
> to testify competently regarding the matters he intends to address; (2)
> the methodology by which he reaches his conclusions is sufficiently
> reliable; and (3) the testimony assists the trier of fact through the
> application of scientific, technical, or specialized expertise, to
> understand the evidence or to determine a fact in issue.

*Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001) (alteration supplied, citations

omitted).  "The inquiry . . . is a flexible one" because, in any given case, "[m]any

factors will bear on the inquiry, and . . . [there is no] definitive checklist or test."

*Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 593-94 (1993)

(alterations and ellipses supplied).

## II. DISCUSSION

Plaintiff retained Dr. Scott L. Tomar to "develop an expert opinion as to

whether the symptoms reported by Dr. Georgia Jones and the diagnoses provided by

her medical professionals would prohibit her from being able to practice clinical

dentistry."[3]   Dr. Tomar's expert report provided an affirmative answer to that

---

[3] Doc. no. 36-1 (Expert Report of Dr. Scott L. Tomar, DMD, DrPH), at ECF 4, ¶ 6. "ECF" is an acronym formed from the initial letters of the name of a filing system that allows parties to file and serve documents electronically (*i.e.*, "Electronic Case Filing").  Bluebook Rule 7.1.4 allows citation to page numbers generated by the ECF header.  *The Bluebook: A Uniform System of Citation*, at 21 (Columbia Law Review Ass'n et al. eds., 19th ed. 2010).  Even so, the Bluebook recommends against citation to ECF pagination in lieu of original pagination.  Consequently, unless stated otherwise, this court will cite to the original pagination in the parties' pleadings.  When the court cites to pagination generated by the ECF header, it will, as here, precede the page number(s) with the letters "ECF."

question.[4]  Dr. Tomar also opined that defendant unnecessarily delayed in processing plaintiff's insurance claims.[5]  Defendant challenges Dr. Tomar's qualifications to offer opinions on those topics, the reliability of the methodology Dr. Tomar employed to develop his opinions, and the value of Dr. Tomar's testimony to the trier of fact.

## A.    Dr. Tomar's Background and Report

Dr. Tomar received a bachelors degree in sociology from Temple University in 1980, and a Doctor of Dental Medicine degree from the same institution in 1984. He received a masters degree in public health from Columbia University in 1989, a specialty certificate in dental public health from the University of Michigan in 1991, and a Ph.D. degree in oral epidemiology from the University of Michigan in 1993.[6] He currently is employed as Professor and Interim Chair of the Department of Community Dentistry and Behavioral Science at the University of Florida College of Dentistry, and he also teaches classes in the University's Departments of Epidemiology and Health Outcomes and Policy.[7]  He describes the study of "dental

---

[4] Doc. no. 36-1 (Expert Report of Dr. Scott L. Tomar, DMD, DrPH), at ECF 10, ¶ 20 ("Based on the materials I have reviewed in this matter, it is my opinion that Dr. Georgia Jones is no longer able to practice dentistry due to her musculoskeletal disorder.").

[5] *Id.* at ECF 9, ¶ 19 ("In my opinion, the handling of Dr. Georgia Jones' disability claim by Massachusetts Mutual Life Insurance Company was characterized by excessive delay . . . .") (ellipsis supplied).

[6] *Id.* at ECF 3, ¶ 2. *See also* doc. no. 36-1 (Scott L. Tomar *curriculum vitae*), at ECF 12.

[7] Doc. no. 36-1 (Expert Report of Dr. Scott L. Tomar, DMD, DrPH), at ECF 3, ¶ 1; *see also* doc. no. 36-1 (Scott L. Tumar *curriculum vitae*), at ECF 12-13.

public health" as "monitoring and addressing occupational hazards of dental health care workers."[8]

Dr. Tomar provided an expert report on June 30, 2017.  In preparation for the report, he studied the complaint and answer in this case, plaintiff's medical records and vocational evaluations, and various correspondence among counsel.  His opinion also was "informed by [his] experience as a dentist and dental educator and first-hand experience in clinical practice."[9]  Finally, he "conducted searches of the scientific literature to assess the prevalence of lower back pain among dentists and the frequency to which such musculoskeletal problems lead to disability and the inability to practice general dentistry."[10]

Dr. Tomar observed that most dentists are taught in dental school to perform nearly all aspects of their practice from an operator's chair, while the patient is seated in a patient chair in a reclined position, and that most clinical dentists use those methods in their practices.[11]  According to Dr. Tomar:

> That seated position, combined with the need to lean forward slightly and bend the head downward to be able to visualize the patient's oral cavity and maintain a static position for long periods of time places tremendous stress on a dentist's lower back.  I and the large majority of

---

[8] Doc. no. 36-1 (Expert Report of Dr. Scott L. Tomar, DMD, DrPH), at ECF 3, ¶ 2.

[9] *Id.* at ECF 4-5, ¶ 7 (alteration supplied).

[10] *Id.* at ECF 5, ¶ 8.

[11] *Id.* at ECF 6, ¶¶ 10-11.

dentists I have known experienced back pain at some time in their career, often for many years.  I have had several colleagues who retired from clinical practice specifically due to musculoskeletal injuries, most frequently due to chronic back pain.

Doc. no. 36-1 (Expert Report of Dr. Scott L. Tomar, DMD, DrPH), at ECF 6, ¶ 12. Dr. Tomar believed his "personal experiences and anecdotal observations [were] corroborated by the scientific literature," including studies documenting that up to 64% of American dentists have reported work-related musculoskeletal disorders, and 10% reported ending their practices because of those disorders.[12]

Dr. Tomar observed from plaintiff's medical records that she experienced "severe, debilitating pain when she tried to practice dentistry or sat in a position that approximated the seated positioning and posture required to practice general dentistry," and that her medical treatment had not provided relief from her symptoms.[13]  Dr. Tomar also concluded there was a "biologic basis" for the severe pain plaintiff experienced, as she had been diagnosed with degenerated and herniated discs of the lumbar spine, lumbosacral spondylosis, lesions of the lumbar and sacral regions, lumbosacral arthrosis, lumbar radiculopathy, and piriformis syndrome.[14]  He opined that it was not possible for plaintiff to *safely* practice dentistry, because her

---

[12] *Id.* at ECF 6-7, ¶¶ 12-13 (alteration supplied).

[13] *Id.* at ECF 7, ¶ 14.

[14] Doc. no. 36-1 (Expert Report of Dr. Scott L. Tomar, DMD, DrPH), at ECF 8, ¶ 15.

pain would prevent her from focusing on her work, and because any medications she might take to relieve pain would also affect her ability to concentrate.[15]  Dr. Tomar discounted the findings of a covert surveillance report revealing that plaintiff was able to grocery shop, lift grocery bags, and get into and out of an automobile, because those movements did not duplicate the functions regularly required by the practice of dentistry.[16]  Instead, Dr. Tomar was more persuaded by the February 26, 2016 Functional Capacities Evaluation performed by (and the written report subsequently authored by) physical therapist Jay Segal, who noted that plaintiff was not able to sit on a stool with her trunk flexed forward ten degrees for more than three minutes, and even the effort required to hold that position for three minutes produced severe pain that lasted days.[17]

Dr. Tomar's final opinion about plaintiff's medical condition and its effect on her ability to work was summarized as follows:

> [G]eneral dentistry is a physically demanding profession and musculoskeletal disorders of the low back are prevalent among general dentists.  As documented in the scientific literature and consistent with my personal knowledge, a significant proportion of those disorders lead to career-ended [*sic*] disabilities.  Based on the materials I have reviewed in this matter, it is my opinion that Dr. Georgia Jones is no longer able to practice dentistry due to her musculoskeletal disorder.

---

[15] *Id.* at ECF 8, ¶ 16.

[16] *Id.* at ECF 8, ¶ 17.

[17] *Id.* at ECF 9, ¶ 18.

*Id.* at ECF 10, ¶ 20 (alterations supplied).  He also opined that

> the handling of Dr. Georgia Jones' disability claim by Massachusetts Mutual Life Insurance Company was characterized by excessive delay from the time she first filed the total disability claim in January 2013 until the complaint against the insurer was filed nearly four years later. The initial rejection letter from Massachusetts Mutual Life Insurance Company was dated October 29, 2014, 10 months after the claim had been filed.  Dr. Jones' appeal of that denial was submitted on June 12, 2015.  More than six months later, in December 2015, the insurer was still trying to schedule an IME [Independent Medical Examination] and FCE [Functional Capacity Evaluation], and those appointments subsequently were rescheduled twice.  Those examinations were not conducted until February 26, 2016, more than 8 months after the appeal had been filed.  It is not clear to me why it took so long to arrange those examinations.  The second denial letter was sent by the insurer on July 25, 2016, more than 13 months after the appeal had been filed and five months after the IME and FCE were conducted.  Dr. Jones continued to pay her insurance premium during that period of more than three and a half years, despite having been forced by her disability to stop practicing dentistry and to sell the dental practice that she had built.  As shown by a trail of correspondence to and from the insurer, there were delays at nearly every step of the claims process.

*Id.* at ECF 9-10, ¶ 19 (alterations supplied).

## B.    Dr. Tomar's Qualifications as an Expert Witness

A expert witness can be "qualified" to testify as an "expert witness" by a broad range of backgrounds, including "by knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  Defendant asserts that Dr. Tomar lacks any of the requisite foundations.

Dr. Tomar is a dentist, professor of dental medicine, and epidemiologist. He has no training or experience in occupational therapy or conducting vocational assessments.[18] He has studied and taught dental public health, including topics related to occupational hazards in the dental profession, but he is not a medical doctor and he has no experience studying, assessing, or treating musculoskeletal disorders. As such, plaintiff candidly acknowledges that "Dr. Tomar is not an expert in musculoskeletal disorders or back pain."[19] Thus, the question becomes whether someone who lacks expertise in musculoskeletal disorders and back pain is qualified to offer the opinions provided by Dr. Tomar.

There are essentially five layers to Dr. Tomar's opinions. First, he stated that dental students in the United States are taught to perform nearly all aspects of their practice from an operator's chair, while the patient is reclined in a dental chair, and that most dentists in the United States do in fact perform most aspects of their practice in that manner. As a dentist, professor of dental medicine, and scholar of occupational hazards in the dental profession, Dr. Tomar is qualified to proffer an opinion on the usual methods for teaching dental students how to posture themselves, and the usual manner in which dentists typically do posture themselves. Defendant

---

[18] Doc. no. 36-3 (Deposition of Scott L. Tomar), at 42-43.

[19] Doc. no. 47 (Plaintiff's Response to Defendant's Motion to Exclude Expert Opinions and Testimony of Plaintiff's Expert Professor Scott L. Tomar), at 8.

does not dispute that Dr. Tomar possesses the requisite qualifications to provide expert testimony on those topics.[20]

Second, Dr. Tomar opined that "[t]hat seated position, combined with the need to lean forward slightly and bend the head downward to be able to visualize the patient's oral cavity and maintain a static position for long periods of time places tremendous stress on a dentist's lower back."[21]   Dr. Tomar has no professional training or experience that would qualify him to render expert opinion about whether a particular activity or posture would place "tremendous stress" upon a person's lower back muscles and spinal column.  Instead, to support his opinion, Dr. Tomar offers descriptions of his own personal back pain and the pain experienced by some of his colleagues, as well as his personal knowledge of dentists who have retired from their clinical practices due to back pain.  While *professional experience* certainly can be sufficient to qualify a witness as an expert in a particular field, neither *personal* experience with, nor anecdotal knowledge of, injuries similar to the one suffered by plaintiff will qualify the witness as an "expert."[22]  In addition, however, Dr. Tomar

---

[20] *See* doc. no. 36 (Defendant Massachusetts Mutual Life Insurance Company's Motion to Exclude Expert Opinions and Testimony of Plaintiff's Expert Scott L. Tomar), at 10 ("In his expert report, Dr. Tomar begins legitimately enough by explaining how dental students are taught to sit while in dental school. . . .  [T]his piece of his opinion does not offend *Daubert* or Rule 702 . . . .") (alteration and ellipses supplied).

[21] Doc. no. 36-1 (Expert Report of Dr. Scott L. Tomar, DMD, DrPH), at ECF 6, ¶ 12 (alteration supplied).

[22] By that logic, plaintiff herself would qualify as an expert witness.

relied upon academic studies addressing the prevalence of musculoskeletal pain, including back pain, among clinical dentists.  Setting aside the issue of whether those studies actually demonstrate that the work postures employed by clinical dentists cause increased back pain, the only authority plaintiff cites to legitimize Dr. Tomar's reliance on those studies is the Eleventh Circuit's unpublished decision in *United States v. Winston,* 372 F. App'x 17 (11th Cir. 2010).  Plaintiff says the *Winston* decision stands for the proposition that "[i]t is fairly well-settled that the facts and data upon which an expert may rely in reaching an expert opinion includes the opinions and findings of other experts, if experts in their respective field[s] would reasonably rely on other expert's [*sic*] opinions and findings."[23]  That description of the *Winston* case is misleading. The *Winston* decision actually stands for the principle, which is well-settled, that "an expert witness may base his testimony on inadmissible information [such as hearsay] so long as such information is 'regularly relied upon by experts in his field.'"  *Id.* at 20 (quoting *United States v. Steed*, 548 F.3d 961, 975 (11th Cir. 2008)) (alteration supplied).  Neither the *Winston* case, nor any other authority cited by plaintiff (or otherwise known to the court), supports the proposition that a person who possesses no other expertise in a given field can

---

[23] Doc. no. 47 (Plaintiff's Response to Defendant's Motion to Exclude Expert Opinions and Testimony of Plaintiff's Expert Professor Scott L. Tomar), at 8 n.3 (alterations supplied).

transform himself into an expert witness in that field simply by reading academic studies.

The third layer of Dr. Tomar's opinions consisted of these conclusions: plaintiff experienced "severe, debilitating pain when she tried to practice dentistry, or sat in a position that approximated the seated positioning and posture required to practice general dentistry"; that there was a "biological basis" for her pain; and, that it would not be possible for her to safely practice clinical dentistry while experiencing such severe pain, or while under the influence of medications to treat her pain.[24] Again, absent any experience or other expertise in musculoskeletal disorders, Dr. Tomar is not qualified to offer expert testimony on the severity or "biological" causes of plaintiff's back pain. Even so, as a dentist and scholar of occupational hazards in the dental profession, he would be qualified to testify regarding whether a person with plaintiff's condition could safely practice clinical dentistry. It must be emphasized, nevertheless, that before Dr. Tomar could offer any such testimony about the safety of plaintiff's practice, the existence and severity of her condition would have to be established by other evidence.

The fourth layer of Dr. Tomar's opinions addressed the activities engaged in by plaintiff and recorded in covert surveillance reports — including grocery

---

[24] Doc. no. 36-1 (Expert Report of Dr. Scott L. Tomar, DMD, DrPH), at ECF 7-8, ¶¶ 14-16.

12

shopping, lifting grocery bags, and getting into and out of an automobile.  Dr. Tomar opined that such activities do not approximate the movements and postures necessary for the practice of clinical dentistry.  Instead, he opined that a physical therapist's observations about plaintiff's inability to sit on a stool with her trunk flexed forward for more than three minutes were more relevant.  Defendant asserts that "Dr. Tomar cannot state that the activities observed and recorded in surveillance somehow fail to simulate occupational demands without a proper understanding of the musculoskeletal system."[25]  The court does not agree with that contention.  Even though Dr. Tomar is not an expert in musculoskeletal disorders or vocational assessment, he is equipped by his experience as a dentist and a scholar of occupational hazards in the dental profession to testify regarding what types of movements and postures are required in the clinical practice of dentistry.

Finally, Dr. Tomar stated that defendant's processing of plaintiff's insurance claim was marked by "excessive delay."[26]  There is no indication that Dr. Tomar has any experience with the insurance claims handling process, much less sufficient experience or other expertise to qualify him as an expert witness.  Plaintiff

---

[25] Doc. no. 36 (Defendant Massachusetts Mutual Life Insurance Company's Motion to Exclude Expert Opinions and Testimony of Plaintiff's Expert Scott L. Tomar), at 12.

[26] Doc. no. 36-1 (Expert Report of Dr. Scott L. Tomar, DMD, DrPH), at ECF 9-10, ¶ 19.

acknowledges as much in her brief.[27]  Accordingly, Dr. Tomar will not be allowed to offer an opinion about the adequacy of the manner in which plaintiff's claim was processed.

In summary, Dr. Tomar is not qualified to offer expert testimony regarding the general musculoskeletal causes of back strain or pain, the specific causes or extent of plaintiff's musculoskeletal injuries, or the adequacy of the manner in which plaintiff's insurance claim was processed.  He is qualified to offer expert testimony regarding the usual methods for teaching dental students how to posture themselves, the usual manner in which dentists typically do posture themselves, what types of movements and postures are required in the clinical practice of dentistry, and whether a person with plaintiff's condition could safely practice clinical dentistry (assuming that the existence and severity of plaintiff's condition already had been established by other evidence).

## C.    Reliability of Dr. Tomar's Opinions

Although defendant challenged the reliability of Dr. Tomar's opinions as to the general causes of back strain, and the specific causes and extent of plaintiff's

---

[27] Doc. no. 47 (Plaintiff's Response to Defendant's Motion to Exclude Expert Opinions and Testimony of Plaintiff's Expert Professor Scott L. Tomar), at 8-9 ("[A]lthough he did make an observation regarding the length of time Mass Mutual took to render a decision, Dr. Tomar is not being offered as an expert in insurance claims handling or practices.") (alteration supplied).

musculoskeletal injuries,[28] those are topics about which Dr. Tomar is not qualified to offer expert opinion.  Accordingly, the reliability of Dr. Tomar's opinions on those matters need not be evaluated.  Defendant did not raise any specific challenges to the reliability of Dr. Tomar's testimony with regard to the usual methods for teaching dental students how to posture themselves, the usual manner in which dentists typically do posture themselves, what types of movements and postures are required in the clinical practice of dentistry, and whether a person with plaintiff's condition could safely practice clinical dentistry.  Accordingly, there is no reason to preclude Dr. Tomar's testimony on those topics on the basis of reliability.

## D.   Assistance to the Trier of Fact

Defendant's arguments about whether Dr. Tomar's testimony would be helpful to the trier of fact similarly are limited to the opinions he is not qualified to provide. For example, defendant asserts that Dr. Tomar's opinions about the prevalence of lower back injuries among the dental profession would confuse the jury; that the notion that sitting in a static, hunched position for many hours a day can cause back

---

[28] *See* doc. no. 36 (Defendant Massachusetts Mutual Life Insurance Company's Motion to Exclude Expert Opinions and Testimony of Plaintiff's Expert Scott L. Tomar), at 13-14 ("Dr. Tomar offers a lot of opinions about the severity of Jones's nonspecific low back pain.  His opinions are based in part, on his experience as a dentist and his observations of some of his dentist-friends who also allegedly experienced back pain. . . .  Dr. Tomar further bases these opinions on his limited 'research' regarding musculoskeletal injuries in the dental profession. . . .  As explained below, these bases provide insufficient support for Dr. Tomar's opinions, rendering his opinions unreliable.") (ellipses supplied).

pain is not beyond the jury's ability to understand without the assistance of expert testimony; and, that Dr. Tomar's use of the term "disability" to describe plaintiff and other dentists who experience back problems is misleading because the term carries a special legal definition under the policies issued to plaintiff.  Defendant does not assert any argument that the trier of fact would fail to be assisted by Dr. Tomar's testimony with regard to the only topics on which he is qualified to offer testimony: *i.e.,* the usual methods for teaching dental students how to posture themselves, the usual manner in which dentists typically do posture themselves, what types of movements and postures are required in the clinical practice of dentistry, and whether a person with plaintiff's condition could safely practice clinical dentistry (assuming that the existence and severity of plaintiff's condition already had been established by other evidence).  Accordingly, there is no reason to preclude Dr. Tomar's testimony on those topics on the basis that it would not assist the trier of fact.

### III. CONCLUSION AND ORDER

In accordance with the foregoing, defendant's motion to exclude Dr. Tomar's expert opinions and testimony is GRANTED in part, and DENIED in part.  It is ORDERED that Dr. Tomar may not offer expert testimony and opinion, either at trial or in conjunction with the pending motions for summary judgment, regarding the general musculoskeletal causes of back strain, the specific causes or extent of

plaintiff's own musculoskeletal injuries, or the adequacy of the manner in which plaintiff's insurance claim was processed.  On the other hand, he may offer expert testimony and opinion, both at trial and in conjunction with the pending motions for summary judgment, regarding the usual methods for teaching dental students how to posture themselves, the usual manner in which dentists typically do posture themselves, what types of movements and postures are required in the clinical practice of dentistry, and whether a person with plaintiff's condition could safely practice clinical dentistry (assuming that the existence and severity of plaintiff's condition already had been established by other evidence).

DONE and ORDERED this 28th day of November, 2017.

United States District Judge

17